**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| **TWIN PAK, LLC,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**AGCO CORPORATION,**<br><br>**Defendant.** | **Case No. 6:26-cv-01218-HLT-GEB** |

# MEMORANDUM AND ORDER

This is a patent case involving a double baler for making small square hay bales. Plaintiff alleges that Defendant's Massey Ferguson SB.1463DB (AGCO baler) infringes the sole claim of its patent. Plaintiff seeks a preliminary injunction enjoining Defendant from using, offering to sell, selling, or importing any product that infringes Plaintiff's patent during this case. Doc. 9. Defendant contends Plaintiff is not entitled to an injunction because the AGCO baler does not infringe the claim, the claim is invalid for public use under 35 U.S.C. § 102(a)(1), and Plaintiff has not shown irreparable harm.

The Court denies the motion. Plaintiff has not shown a likelihood of success that the splitting knife on the AGCO baler directly and literally infringes the claim. Defendant also has raised a substantial question regarding public use invalidity that Plaintiff has not shown lacks substantial merit. And Plaintiff has not shown irreparable harm on this record given its delay initiating this lawsuit.[1]

[1] Defendant moves to file a surreply because Plaintiff's reply includes new evidence and argument (e.g., expert testimony on infringement, invalidity, and claim construction). Doc. 69. Plaintiff has not filed a response. The Court grants the motion because Plaintiff's reply includes expert testimony and argument not previously disclosed. The surreply is an appropriate vehicle for responding to the new issues, and the proposed surreply is limited to them. The Court grants Defendant's motion to file a surreply. The surreply at Doc. 69-1 is deemed filed and has been considered in resolving this motion.

## I. BACKGROUND

Jason Grady is the inventor of United States Patent No. 12,256,676 (‘676 Patent) titled Baling Apparatus and Method. Doc. 1-1. He assigned the ‘676 Patent to Plaintiff. The ‘676 Patent is a continuation patent and claims priority through a parent application to July 2, 2018. Claim 1 recites:

> A baling apparatus for simultaneously forming multiple square bales of crop material picked up from a field as said apparatus is moved along the field, said apparatus comprising:
>
> a baling chamber having an inlet for receiving the crop material from the field, an open exit end spaced from said inlet, a roof, and a horizontally extending floor, wherein said roof and said floor are formed with spaced members;
>
> a plunger movable within said baling chamber to move the crop material in a path within said baling chamber along said floor from said inlet toward said open exit end; and
>
> a stationary splitting knife mounted in said baling chamber to extend vertically from said floor, said splitting knife having a leading cutting edge extending vertically from said floor to be transverse to said path and to face said plunger and opposing vertical cutting edges tapering to said leading cutting edge, said opposing vertical cutting edges being angled toward said leading cutting edge and said leading cutting edge being centered between said opposing vertical cutting edges to form tapering areas on opposite sides of said leading cutting edge to assist center splitting of the crop material to simultaneously form bales of the crop material spaced by said splitting knife without requiring movement of said splitting knife, wherein a top portion of said splitting knife is mounted to a support at the same level as said roof of said baling chamber and a bottom portion of said splitting knife extends through a gap between spaced members of said floor.

Doc. 1-1 at 6:53-7:16. The ‘676 Patent issued March 25, 2025.

Plaintiff began selling a 3-tie commercial embodiment of the ‘676 Patent in 2019 (Twin Pak 3-tie baler) and a 2-tie commercial embodiment in 2023 (Twin Pak 2-tie baler). Defendant introduced the AGCO baler (i.e., a 2-tie baler) in February 2025. Plaintiff’s sales of the Twin Pak

2-tie baler have dropped since Defendant introduced the AGCO baler. Grady concluded in June 2025 that the AGCO baler infringes the '676 Patent. Plaintiff's counsel sent a letter to Defendant in November 2025, but it did not file this lawsuit until July 14, 2026.

## II. STANDARD

A party may seek an injunction "to prevent the violation of any right secured by patent" under 35 U.S.C. § 283. A party seeking a preliminary injunction must show (1) there is a likelihood of success on the merits, (2) irreparable harm will occur unless the injunction is issued, (3) the balance of equities tip in favor of an injunction, and (4) the injunction is in the public interest. *Titan Tire Corp. v. Case New Holland, Inc.*, 566 F.3d 1372, 1375-76 (Fed. Cir. 2009). A preliminary injunction is "extraordinary relief." *Id.* at 1375. Whether to issue an injunction is within the discretion of the court. *Id.*[2]

## III. ANALYSIS

### A. Likelihood of Success on the Merits

Plaintiff contends the AGCO baler directly and literally infringes the sole claim of the '676 Patent.[3] Defendant challenges infringement and asserts public use invalidity under 35 U.S.C. § 102(a)(1).

#### 1. Infringement

The Court starts with infringement. A "patentee seeking a preliminary injunction in a patent infringement suit must show that it will likely prove infringement." *Titan Tire Corp.*, 566 F.3d at 1376. Infringement is a two-step process: (1) construing the claims and (2) comparing the properly

---

2 "[T]he Federal Circuit has explained that a preliminary injunction enjoining patent infringement pursuant to 35 U.S.C. § 283 involves substantive matters unique to patent law and, therefore, is governed by the law of [the Federal Circuit]." *Revision Mil., Inc. v. Balboa Mfg. Co.*, 700 F.3d 524, 525 (Fed. Cir. 2012) (internal quotation and citation omitted).

3 Plaintiff confirmed at the hearing that it does not rely on the doctrine of equivalents to show infringement for purposes of this motion.

construed claims to the accused device. *Tinnus Enters., LLC v. Telebrands Corp.*, 846 F.3d 1190, 1203 (Fed. Cir. 2017). A defendant "can defeat a showing of likelihood of success on the merits by demonstrating a substantial question of . . . infringement." *Id.* at 1202 (internal quotation and citation omitted). Literal infringement requires that "each and every limitation set forth in a claim appear in an accused product." *V-Formation, Inc. v. Benetton Group SpA*, 401 F.3d 1307, 1312 (Fed. Cir. 2005).

The gravamen on the infringement dispute focuses on the final element of the claim, which recites:

> a stationary splitting knife mounted in said baling chamber to extend vertically from said floor, said splitting knife having a leading cutting edge extending vertically from said floor to be transverse to said path and to face said plunger and opposing vertical cutting edges tapering to said leading cutting edge, said opposing vertical cutting edges being angled toward said leading cutting edge and said leading cutting edge being centered between said opposing vertical cutting edges to form tapering areas on opposite sides of said leading cutting edge to assist center splitting of the crop material to simultaneously form bales of the crop material spaced by said splitting knife without requiring movement of said splitting knife, wherein a top portion of said splitting knife is mounted to a support at the same level as said roof of said baling chamber and a bottom portion of said splitting knife extends through a gap between spaced members of said floor.

Doc. 1-1 at 6:66-7:16. Plaintiff filed a preliminary claim chart mapping the AGCO baler onto this element. Doc. 1-4. Plaintiff did not construe any terms because the "terms in the patent claim at issue are clear and nothing requires a special definition." Doc. 9 at 10 n.8.

Defendant contends that the AGCO baler does not satisfy this element because the alleged leading cutting edge of the AGCO baler's splitting knife does not extend vertically from the floor

of the baling chamber.[4] Defendant explains that the words "vertical" or "vertically" in the '676 Patent mean straight up and down or 90 degrees from the horizontal floor of the baling chamber. Doc. 51 at 26-27; Doc. 53 (Fleming Decl.) at 23-29 (discussing construction).[5] Defendant argues that the AGCO baler's alleged leading cutting edge does not extend vertically from the floor of the baling chamber and instead extends at something closer to a 45-degree angle as shown in the below image:



Doc. 51 at 27. Defendant concludes that the AGCO baler does not literally infringe this element because Claim 1 recites a "splitting knife having a leading cutting edge extending vertically from said floor" whereas the AGCO baler has a knife with an angled leading cutting edge.

Plaintiff disputes this construction and contends (for the first time in its reply) that "vertical" or "vertically" means "parallel to the side walls, or in other words, in the X-Z plane." Doc. 64-3 (Lang Decl.) at 17 (discussing construction); Doc. 64 at 2. Plaintiff supports this construction with language from the specification that discusses a stationary splitting knife that "extends vertically from the floor [] <u>in a plane parallel</u> with the vertical side walls" of the baling

---

[4] The Court does not reach Defendant's other noninfringement argument, namely that the top portion of the alleged splitting knife in the AGCO baler is not mounted at the same level as the roof of the baling chamber.

[5] The parties offer competing definitions of a person having ordinary skill in the art. Plaintiff's construction is narrower; Defendant's is broader. The parties agree that the differences in definition do not impact this motion.

chamber. Doc. 1-1 at 4:42-43 (emphasis added); Doc. 64-3 (Lang Decl.) at 15. It also points to the purpose of the Twin Pak baler, which is to form square bales, and explains that the parallel orientation of the knife and its cutting edge is what allows the formation of square bales. *Id.* Plaintiff illustrates its position with the following diagram, which labels the Z-axis running from the floor to the ceiling of the baler, the Y-axis running horizonal and parallel with the floor of the baler, and the X-axis extending from the rear of the baler to the front. *Id.* at 16.




But Plaintiff's construction overlooks how the claim uses the term "vertical" or "vertically" throughout. The final element of Claim 1 uses "vertical" or "vertically" to describe three features of the splitting knife: (1) "a stationary splitting knife mounted in said baling chamber to extend vertically from said floor," (2) "a leading cutting edge extending vertically from said floor to be transverse to said path and to face said plunger," and (3) "opposing vertical cutting edges being angled toward said leading cutting edge and said leading cutting edge being centered between said opposing vertical cutting edges to form tapering areas on opposite sides of said leading cutting edge." Doc. 1-1 at 6:66-7:16 (emphasis added). Plaintiff's proposed definition of "vertical" or

"vertically"—parallel to the side walls or in the X-Z plane—works for the first two uses. But it doesn't work for the third.

In the third, the '676 Patent is describing what might colloquially be referred to as the bevels of the knife—two opposing tapered edges that lead to a centered leading cutting edge. Because those edges are tapered and "angled toward said leading cutting edge," they are not parallel to the side walls of the baling chamber or in the X-Z plane. Indeed, they would not be beveled edges if they were parallel to the side walls.

The Federal Circuit has instructed that "a claim term should be construed consistently with its appearance in other places in the same claim or in other claims of the same patent." *Rexnord Corp. v. Laitram Corp.*, 274 F.3d 1336, 1342 (Fed. Cir. 2001). Claim 1 describes the beveled edges of the splitting knife as "vertical." But everyone seems to agree that the beveled edges cannot be "vertical" if that means parallel to the side walls.[6] It necessarily follows that "vertical" cannot mean parallel to the side walls or in the X-Z plane for any uses of that word in the '676 Patent, if the terms are to be read consistently.

Plaintiff has not come forward with a theory of infringement that construes a claim term consistently across limitations. It thus has not shown a likelihood of success on infringement.[7]

---

6 Lang acknowledged this discrepancy at the preliminary-injunction hearing and conceded that the bevels of the knife are not parallel to the side walls or in the X-Z plane.

7 The Court need not definitively construe "vertical" or "vertically" at this stage. *Natera, Inc. v. NeoGenomics Lab'ys, Inc.*, 106 F.4th 1369, 1375 (Fed. Cir. 2024) ("A district court has no obligation to definitively construe claims at the preliminary injunction stage."); Doc. 9 at 10 n.8. It is sufficient to find Plaintiff's proposed construction is not proper because it does not consistently define "vertical" or "vertically." Plaintiff offered a new construction of "vertical" at the preliminary-injunction hearing. That construction was that vertical means parallel to the Z-axis when viewed from the perspective of the Y-Z plane, or in other words, perpendicular to the floor of the baler when viewed from the perspective of the plunger. The Court will not consider the new construction offered at the hearing. The new construction has not been briefed and upsets the carefully crafted timeline and procedure put in place by the Court to resolve the motion. It is Plaintiff's burden to come forward with infringement contentions at the outset, not to modify its contentions and underlying constructions as flaws are revealed. Thus, for purposes of the preliminary-injunction motion, the Court finds Plaintiff has not met its burden to show a likelihood of success on infringement. This ruling is not intended, however, to foreclose any arguments that may develop as the case progresses.

### 2. Invalidity

The Court turns to Defendant's invalidity challenge under 35 U.S.C. § 102(a)(1). A patent is presumed valid. 35 U.S.C. § 282(a). A defendant who raises invalidity at trial bears the burden to prove invalidity by clear and convincing evidence. *Titan Tire Corp.*, 566 F.3d at 1376. This presumption and burden structure carry over to the preliminary-injunction phase. *Id.* The accused infringer has the burden to come forward with evidence of invalidity. *Id.* If it raises a substantial question of invalidity, the patentee must show that the invalidity defense "lacks substantial merit." *Id.* at 1378-79; *see also BlephEx, LLC v. Myco Indus., Inc.*, 24 F.4th 1391, 1399 (Fed. Cir. 2022) (explaining burden). The ultimate question remains whether the patentee has persuaded the court that it is likely to succeed on the question of validity. *Titan Tire Corp.*, 566 F.3d at 1377, 1380.

Defendant argues the sole claim is invalid for public use under 35 U.S.C. § 102(a)(1).[8] Section 102(a)(1) states that a person is entitled to a patent unless "the claimed invention was patented, described in a printed publication, or in public use, on sale, or otherwise available to the public before the effective filing date of the claimed invention." Disclosures made by the inventor one year or less before the effective filing date do not render a claim invalid. 35 U.S.C. § 102(b)(1). The '676 Patent's effective filing date is July 2, 2018, which makes the critical date July 2, 2017. *See* 35 U.S.C. § 102(b)(1)(A).

The public-use inquiry focuses on whether, before the critical date, the invention was both (1) in public use and (2) ready for patenting. *Invitrogen Corp. v. Biocrest Mfg., L.P.*, 424 F.3d 1374, 1379 (Fed. Cir. 2005).[9] An invention is in the public use "if it is shown to or used by an

---

[8] The Court does not reach Defendant's argument that the claim is invalid as obvious under 35 U.S.C. § 103 based on the 2013 manual in view of Tietje further in view of either Ast or Jutte. Doc. 51 at 33.

[9] The patent in this case post-dates the effective date of the America Invents Act (AIA) and thus the post-AIA version of § 102 applies. Neither party disputes that relevant pre-AIA caselaw still applies.

individual other than the inventor under no limitation, restriction, or obligation of confidentiality." *Am. Seating Co. v. USSC Grp., Inc.*, 514 F.3d 1262, 1267 (Fed. Cir. 2008). An invention is ready for patenting when it has been reduced to practice. *Pfaff v. Wells Elecs., Inc.*, 525 U.S. 55, 67-68 (1998). And reduction to practice is shown where an inventor has possession of the subject matter of the claim and it was shown to work for its intended purpose. *Helsinn Healthcare S.A. v. Teva Pharms. USA, Inc.*, 855 F.3d 1356, 1372 (Fed. Cir. 2017). Possession may be shown by a working prototype. *Minerva Surgical, Inc. v. Hologic, Inc.*, 59 F.4th 1371, 1377 (Fed. Cir. 2023).

**a. In Public Use**

Defendant contends the claimed invention was in public use because Grady sent some emails to Dean Morrell of AGCO on March 22, 2016, about the 2016 Prototype. The first email stated:

> Here are the pictures of the prototype I built for yourself and the engineers at [AGCO] to enjoy, it's the future of small baling whether it's 2 tie bales or 3 tie bales the same concept appl[ies]. Making 2 bales at the same time will be much more efficient in every aspect labor, tractors, fuel etc. Thank you for your consideration videos to follow of baling wheat straw also corn stover.

Doc. 54-5 at 2. This email and the one immediately following it included several images of the 2016 Prototype. *Id.* at 3-6; Doc. 54-6 at 2-6. Grady also sent Morrell a video of the 2016 Prototype in action. Doc. 9-6 (conventionally filed).

The March 2016 emails and images are sufficient to raise a substantial question of public use. "If an inventor, having made his device, gives or sells it to another, to be used by the donee or vendee, without limitation or restriction, or injunction of secrecy, and it is so used, such use is public, even though the use and knowledge of the use may be confined to one person." *Egbert v. Lippmann*, 104 U.S. 333, 336 (1881). Here, Grady sent detailed photos and a video of the 2016 Prototype to Defendant without limitation or restriction. *See Am. Seating Co.*, 514 F.3d at 1267.

These were not just casual or superficial images; they showed the inner workings of the 2016 Prototype. *See* Doc. 54-18 (mapping the asserted claim on to the images).

Plaintiff counters that the emails were sent under an agreement of confidentiality. There is no written documentation of confidentiality from 2016 before the Court. Plaintiff instead points to a conversation Grady had with Joe Orluck (his friend who worked for AGCO). Grady told Orluck about his baler and said he wanted to keep it a secret. *See* Doc. 64-11. Orluck connected Grady with Morrell to see if AGCO was interested. *Id.* Grady was nervous to share any details. *Id.* Orluck was aware of Grady's reservations, but he can't specifically remember what was said or what he said to Morrell, but Orluck thinks he would have asked Morrell to keep the invention secret. *Id.* at 3 ("I think I would have told Dean [Morrell] the invention should be kept secret, but I don't have any specific memory of exactly what I said.").

An understanding of confidentiality is generally implied where access to an invention is "clearly limited and controlled by the inventor, depending upon the relationship of the observers and the inventor." *See Am. Seating Co.*, 514 F.3d at 1268; *Invitrogen Corp.*, 424 F.3d at 1382 (noting that "an agreement of confidentiality, or circumstances creating a similar expectation of secrecy, may negate a 'public use' where there is not commercial exploitation"). Here, however, the facts surrounding Grady and Orluck's understanding do not necessarily establish an implied understanding of confidentiality that extends to Morrell. At most, the record shows that Orluck thought he would've asked Morrell to keep Grady's invention a secret. But he could not recall any specific conversation. And the email Grady sent to Morrell did not include any limitations on use, nor did it even request secrecy, confidentiality, or state any obligation of non-disclosure. This is a

marked departure from future dealings Grady had with AGCO, which involved written non-disclosure agreements.[10]

In sum, Grady sent Morrell the images in 2016 without any use limitation or secrecy obligation in the actual communication. On this record, the Court finds that Grady's subjective trust in Orluck and Orluck's subjective trust in Morrell (even assuming a conversation occurred between Orluck and Morrell on this topic) does not translate to any legal obligation of secrecy. For purposes of a preliminary injunction, the Court finds Defendant has raised a substantial question about whether Grady made his invention public when he sent images to AGCO in 2016. *See Am. Seating Co.*, 514 F.3d at 1267. Although Plaintiff has raised arguments that the disclosure was made under an informal and implied understanding of confidentiality, Plaintiff has not demonstrated on this record that the in-public-use element of this affirmative defense lacks substantial merit.

**b. Ready for Patenting**

The ready-for-patenting element can be shown through reduction to practice, which means that the inventor has possession of the subject matter of the claim and it was shown to work for its intended purpose. *Helsinn Healthcare S.A.*, 855 F.3d at 1372. The factual record suggests this standard is also met.

By March 2016, Grady had a working prototype that included the claim elements. Doc. 54-18 (mapping the asserted claim on to the 2016 Prototype). He thus had possession of the subject matter of the asserted claim. And the prototype worked for its intended purpose. The video showed the 2016 Prototype producing bales. Doc. 9-6. Grady gave a podcast interview in which he stated

[10] In January 2020, some AGCO representatives, including Morrell, visited the Twin Pak facility to observe the Twin Pak 3-tie baler and discuss AGCO possibly acquiring Twin Pak. This visit occurred under the terms of a written non-disclosure agreement. There is nothing to suggest that this non-disclosure agreement operated retroactively or applied to the emails sent in March 2016.

the first prototype "worked great" for the most part and "did its job" and was "the nut idea." Doc. 53-11 at 8; *see also id.* at 9 (explaining use of prototype). And in other litigation where the ownership of his invention was challenged, Grady testified the 2016 Prototype was used for an entire summer and "performed really well." Doc. 54-2 at 11.

In this litigation, however, Grady has testified that the 2016 Prototype disclosed to AGCO did not actually work as intended and did not reliably produce serviceable bales. He also contends that developing this prototype into the final version of the Twin Pak baler required experimentation. Experimental use may negate a public use challenge. *Invitrogen Corp.*, 424 F.3d at 1380. But regardless of whether Grady continued to experiment, there is evidence that a working prototype containing the claim elements existed in 2016. It may not have worked perfectly, but it did work. This is sufficient to raise a substantial question about whether the first prototype was ready for patenting in 2016. *See Hamilton Beach Brands, Inc. v. Sunbeam Prods., Inc.*, 726 F.3d 1370, 1379 (Fed. Cir. 2013) ("Hamilton Beach's argument that some of the prototypes did not work as intended is of no moment, moreover, because 'fine-tuning' of an invention after the critical date does not mean that the invention was not ready for patenting.").

The Court acknowledges Grady's testimony that his earlier statements about the 2016 Prototype were just him inadvertently conflating different prototypes or speaking on the fly without preparation. But the current record largely consists of his words when his interests point in one direction versus his words when his interests point in another direction. To be clear, the Court does not need to resolve any factual disputes about the ultimate readiness of the first prototype, which will likely become issues for a jury to decide as the case proceeds. The issue at the preliminary-injunction stage is different: whether Defendant has raised substantial questions of invalidity and whether Plaintiff has shown those questions lack substantial merit. On the current

record, it is enough for the Court to conclude that Defendant has shown substantial questions going to public use and readiness for patenting and that Plaintiff has not shown that these questions lack substantial merit. Plaintiff has therefore not shown a substantial likelihood of success on Defendant's invalidity challenge.

**B. Irreparable Harm**

The Court also addresses irreparable harm. "A party seeking a preliminary injunction must show it is likely to suffer irreparable harm if the injunction is not granted and establish a causal nexus between the alleged infringement and the alleged harm." *Natera, Inc.*, 106 F.4th at 1378. On this record, Plaintiff has not shown a likelihood of success on its infringement claim and that it will likely withstand Defendant's public-use validity challenge. This necessarily eliminates any causal nexus to the harm claimed by Plaintiff. *See Reebok Int'l Ltd. v. J. Baker, Inc.*, 32 F.3d 1552, 1556 (Fed. Cir. 1994) (noting that "a district court may properly deny a motion for preliminary injunction simply based on the movant's failure to establish a reasonable likelihood of success on the merits"); *see also Apple, Inc. v. Samsung Elecs. Co.*, 678 F.3d 1314, 1324 (Fed. Cir. 2012) ("To show irreparable harm, it is necessary to show that the infringement caused harm in the first place.").

But the Court also finds the timing of this case significant to the irreparable-harm analysis. Grady first saw the AGCO baler at a farm show in February 2025. The '676 Patent issued on March 25, 2025. By June 2025, Grady had concluded the AGCO baler infringed the '676 Patent. But Plaintiff waited until July 14, 2026, before it filed suit. This was 17 months after Grady first saw the AGCO baler, 16 months after the '676 Patent issued, and 13 months after Grady concluded the AGCO baler was infringing the '676 Patent. The Court acknowledges that Plaintiff's counsel sent a letter to AGCO regarding the patent in November 2025. But it doesn't appear that letter got

any response. Plaintiff still waited several months before filing suit. This delay necessarily cuts against irreparable harm. *Apple, Inc.*, 678 F.3d at 1325 (agreeing that "delay in bringing an infringement action and seeking a preliminary injunction are factors that could suggest that the patentee is not irreparably harmed by the infringement").

### C. Remaining Injunction Factors

The Court does not reach the remaining injunction factors because Plaintiff has not demonstrated a likelihood of success on infringement or invalidity and has not shown irreparable harm. *Reebok Int'l Ltd.*, 32 F.3d at 1556 (declining "to require a district court to articulate findings on the third and fourth factors when the court denies a preliminary injunction because a party fails to establish either of the two critical factors"). Even to the extent they weigh in favor of issuing an injunction, these factors would not overcome Plaintiff's failure on the first two elements.

## IV. CONCLUSION

The Court realizes this is a deeply important case to the parties. But Plaintiff seeks extraordinary relief at a preliminary stage. Discovery and later rulings (e.g., claim construction) may change the complexion of this case. But, on this record, the Court finds that a preliminary injunction is not warranted.

THE COURT THEREFORE ORDERS that Plaintiff's Motion for Preliminary Injunction (Doc. 9) is DENIED.

THE COURT FURTHER ORDERS that Defendant's Motion for Leave to File a Surreply (Doc. 69) is GRANTED.

IT IS SO ORDERED.

Dated: November 25, 2026

/s/ *Holly L. Teeter*
HOLLY L. TEETER
UNITED STATES DISTRICT JUDGE